BEACH *v.* HAYNER.

WATERS AND WATERCOURSES—INLAND LAKE—RIPARIAN OWNERS—
RIGHT TO USE WHOLE OF SURFACE.

Where there are several riparian owners to an inland lake,
such proprietors and their lessees and licensees may use
the surface of the whole lake for boating and fishing,
so far as they do not interfere with the reasonable use of
the waters by the other riparian owners.

Appeal from Livingston; Collins, J. Submitted June
6, 1919. (Docket No. 75.) Decided July 17, 1919.

Bill by Hiram G. Beach against James Hayner and
others to enjoin a trespass. From a decree dismissing
the bill, plaintiff appeals. Affirmed.

*Louis E. Howlett,* for plaintiff.
*Francis J. Shields,* for defendants.

KUHN, J. This bill was filed to enjoin the de-
fendants from entering upon waters covering lands
claimed to be owned by plaintiff, located in the town-
ship of Hamburg, Livingston county, Michigan, and
trespassing thereon contrary to his orders and request.

Silver Lake is an inland lake without visible outlet
or inlet, covering about 100 acres of land. It is sur-
rounded by hard banks on all shores except at the
southwest. It is the claim of the plaintiff that he
owns all of the land covered by the waters of the lake,
except two small parcels at the northwesterly corner
thereof and three or four small parcels at the south-
erly and southwesterly corner of the lake. Being lo-
cated in the center of the section, the lines of the
various subdivisions of land at these points extend
into the water, so that at the northwesterly corner of

the lake four or five acres of the land of the Root estate is covered by water. Mr. M. R. Bennett, who owns the adjoining farm, has three or four acres covered by water. In the southwest part of the lake the Napier farm covers three or four acres, and the Featherly farm, now owned by Rosier, covers about six acres; on the south end the Hankins farm about half an acre, and the Rice farm about two and a half acres, making a total of approximately 20 acres. In the center of the lake the plaintiff owns all the land between the two shores. During the last ten or twelve years cottages have been built upon the lands above referred to and have been rented to various occupants. At the time of the filing of the bill of complaint the defendants were tenants of the owners of these cottages and were occupying the same and spending the summer, or a portion of the same, at these cottages. When the defendants were not occupying the cottages, they sublet them to various people. The defendants, together with their families, guests, subtenants and patrons, to whom they rented their boats, were claiming the right to travel at will over the lake, wherever they desired. The circuit judge dismissed the bill, alleging his reasons as follows:

"The court, however, is of the opinion that where there are several riparian proprietors of an inland lake, that all such proprietors and their lessees may use the surface of the whole lake for boating, fishing, and fowling purposes, if access is gained to the lake from their own or leased land; and that no one riparian proprietor can exclude another riparian proprietor from the exercise of these rights; and that neither can one riparian proprietor exclude the lessees of another riparian proprietor from the exercise of these rights."

Some claim is made with reference to the plaintiff's title to a 25-acre parcel, the controversy with reference to which was before this court before, and is re-

ported in the case of *Beach* v. *Rice,* 186 Mich. 95. We
there held that the title to this 25 acres should be de-
termined in an action of ejectment and that the ques-
tion of plaintiff's title to the land should not be de-
termined in the chancery suit. The trial judge, rely-
ing upon this decision, again held in this case, and we
think correctly, that the plaintiff cannot maintain this
action in the chancery side of the court, as he has not
by ejectment proceedings established his ownership
and possession of said lands, and properly dismissed
the bill as to the 25 acres.

The real question in controversy seems to be, as
stated by counsel for plaintiff and appellant in his
brief, as follows:

"The important legal question involved in the case
is whether or not, where more than one person owns
the bed of an inland pond with neither outlet nor in-
let, can one owner exclusively use and control his
property against the trespass of the public who claim
to have a license from the other owners of land in
the lake, to go thereon?"

This exact situation has not been before this court.
The case of *Giddings* v. *Rogalewski,* 192 Mich. 319,
involved a small, unmeandered, shallow, and discon-
nected sheet of water wholly upon the premises of a
private owner, and which could only be reached by
invading private premises. It was held that such a
lake is not navigable, and that every unauthorized in-
trusion upon the private premises of another is a tres-
pass, and the owner was protected in his exclusive
rights to the use of this water. But it was distinctly
said in that opinion:

"The right of the people to fish in navigable or
meandered waters where fish are propagated, planted,
or spread, and to which they have lawful access by
land or water, even though such waters may superim-
pose the subaqueous lands of a private owner, is not
decided nor involved here."

In the recent case of *Winans* v. *Willetts*, 197 Mich. 512, which is relied upon by the appellant as sustaining the principle of his contentions, Mr. Justice OSTRANDER, in writing the majority opinion, said:

"As I understand the record, however, plaintiff has not shown himself to be the owner, or lessee in possession, of all the land covered by the waters of the lake. In such case, of course, defendants might prove a license to fish in the lake, and it would then be a question for decision whether, possessing such a license, the licensee could fish in any part of the lake. No such question is presented upon this record."

We do not understand that it is the claim of counsel for the plaintiff that they have any property rights in the fish in the lake, which are *feræ naturæ*, and so far as any right of property in them can exist, it is in the public or in common to all until they are taken and reduced to actual possession, but it is his contention that licensees of riparian owners have no right to enter upon the waters covering the lands of the plaintiff for the purpose of fishing or boating. In the case of *Inhabitants of West Roxbury* v. *Stoddard*, 7 Allen (Mass.), 158, the following general rule was announced by the court:

"Fishing, fowling, boating, bathing, skating or riding upon the ice, taking water for domestic or agricultural purposes or for use in the arts, and the cutting and taking of ice, are lawful and free upon these ponds, to all persons who own lands adjoining them, or can obtain access to them without trespass, so far as they do not interfere with the reasonable use of the ponds by others, or with the public right, unless in cases where the legislature have otherwise directed."

In this State, in the case of *Sterling* v. *Jackson*, 69 Mich. 488, it was held that a man had the exclusive right of fowling upon his own land, whether it is upland or land covered by water, but a distinction

seems to be made in the majority opinion of the court between fowling and fishing. In the dissenting opinion of Mr. Justice CAMPBELL the following was said:

"It is the law of this State that the riparian owner of any kind of water has presumptively the right to such uses in the shores and bed of the stream as are compatible with the public rights, if any exist, or with private rights, connected with the same waters. In rivers the theoretical line of ownership is in the middle thread or line of the stream, unless changed by islands or some other cause of deflection. If the stream is crooked, the curves must be adjusted so as to save all the rights of the different owners. But lakes have no thread, and, while there is usually no difficulty in fixing equitable bounds near the shore, it cannot be done, by any mathematical process, over any considerable extent of the lake; and if—which does not often happen—there is any occasion for making partition of the surface, it can only be reached by some measure of proportion requiring judicial or similar ascertainment and not by running lines from the shore. Small and entirely private lakes are sometimes divided up for such purposes as require separate use; but for uses like boating, and similar surface privileges, the enjoyment is almost universally held to be in common. This was held by the house of lords in *Menzies* v. *Macdonald*, 36 Eng. Law & Eq. 20. It was there held that for all purposes of boating and fishing, the whole lake was open to every riparian owner; while for such fishing as required the use of the shore, each was confined to his own land for drawing seines ashore, and the like uses."

This reasoning seems to be appealing. To hold with the plaintiff and appellant in this case would cause the establishment of a rule very difficult in its application. All riparian owners and their licensees would have a clear right to enter upon certain portions of the surface of the lake, and it certainly would be very difficult to establish definite lines of demarcation along the property lines of the various owners. As the

question of fowling upon the waters is not presented by the bill and is not in issue here, it will be unnecessary to determine that question, but we are of the opinion that the judge was right in holding that where there are several riparian owners to an inland lake, such proprietors and their lessees and licensees may use the surface of the whole lake for boating and fishing, so far as they do not interfere with the reasonable use of the waters by the other riparian owners.

Some contention is made that the defendants Meyers and Dupper did not occupy land adjoining the lake and therefore cannot claim to be riparian owners and for that reason entitled to privileges upon the lake. The record discloses that they both testified that they had received permission from riparian owners and therefore were licensees of such owners, and under the ruling of the trial court, with which we agree, they therefore could not be said to be trespassers.

We conclude, therefore, that the decree of the court below dismissing the plaintiff's bill should be affirmed, with costs.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.