## Richmond

Andrew P. Wickouski, Et Al. v. Russell O. Swift, Et Al.

April 23, 1962.

Record No. 5398.

Present, All the Justices.

*DuVal Q. Hicks, Jr. (Frank B. Beazley; Peyton Farmer; Hicks, Gouldman & Cox; Mahon & Farmer,* on brief), for the appellants.

*Julien J. Mason,* for the appellees.

Snead, J., delivered the opinion of the court.

Russell O. Swift and Charlotte R. Swift, his wife, co-owners of a portion of a pond, filed a bill in chancery against three brothers, Andrew P., Joseph and Michael Wickouski, also co-owners of a portion of the pond, and against Michael Kulynych, owner of another portion of it. Complainants prayed that an injunction be issued en-

joining and restraining the defendants from boating, trapping, fishing and from inviting others to fish on their portion of the pond, and that the complainants be permitted to erect a fence across the pond to prohibit boats from entering their portion of it. On November 20, 1959, a temporary injunction was issued substantially as prayed for in the bill, which remained in effect until the case was heard *ore tenus* and decided. By decree dated March 4, 1961, the injunction was made permanent and complainants were authorized to erect a fence across the pond at their northern boundary line. The entry of this decree gave rise to this appeal.

The nonnavigable pond, known as "Cosby's Pond", is a long, narrow body of fresh water situated near Guinea in Caroline county, contains 30 acres, more or less, and has been in existence for a number of years. There is a dam at the south end and its waters back upstream in a northerly direction for a distance of over a half mile. Its width between the east and west banks averages about 100 yards, and it is fed by several streams.

The titles to and boundaries of the surface and the submerged lands owned by the litigants are not here in dispute. Complainants own in fee simple 5½ acres, more or less, of surface or high land and approximately 28 acres of submerged land, which they acquired from Atwill R. Melton and Virginia Melton, his wife, by deed dated June 2, 1952. The larger area of surface land consists of an arm bordering on the pond near the southwest end which extends southwestwardly to a public road and is 210 feet wide where it abuts. The balance of the surface land consists of a narrow strip south of the dam which extends northwardly on both the east and west sides of the pond to the location of the northern line of their property, which is the dividing line between complainants' property and that of defendant Kulynych. In other words, the Swifts own surface land entirely surrounding the pond except at its north end, where the northern boundary of their land coincides with the southern boundary of the land of Michael Kulynych.

Michael Kulynych is the fee simple owner of 1.3 acres of land covered by the waters of the pond and also surface lands which abut it, which properties were conveyed to him by C. Lee Flippo and others by deed dated July 31, 1956. North of and adjoining Kulynych's section of the pond is another 1.3 acres of land covered by the waters of the pond owned in fee simple by the Wickouski brothers which they acquired from the Flippos by a separate deed on the same date. They also were conveyed surface lands which abut this parcel.

The remaining small portion of the pond is east of defendants and north of complainants. Its owner was not made a party to this cause.

The waters on the Swift and Kulynych sections of the pond are "boatable" and a large part of the Wickouski section is likewise "boatable"; the balance of their portion is covered by lily pads.

The record shows that the defendants, their licensees and invitees have fished from boats on the Swifts' portion of the pond from time to time. The Wickouskis admitted that they had trapped fish in their section of the pond, but denied having done so on the section owned by the Swifts or that owned by Kulynych. Swift found fish traps in his section of the pond since 1956, but did not know who placed them there. All defendants claim the right to boat and fish on the entire pond, but not the right to "touch complainants' bed or banks" without their consent.

The dominant question presented for our consideration is whether complainants have exclusive control and use of the waters over their portion of the bed of the pond and have the right to erect a fence on their boundary line across the pond.

In *Providence Forge Club* v. *Miller Co.*, 117 Va. 129, 131, 83 S. E. 1047, we said:

"Authority of the highest character is abundant that an adjoining land owner on an inland fresh water lake or pond takes to the center, the same rules applying in such cases as apply in cases of streams. Of course, the rule does not apply to the great navigable lakes to which all those reasons apply which apply to the sea itself. *Hardin* v. *Jordan*, 140 U. S. 371, 11 Sup. Ct. 808, 35 L. Ed. 428. *A fortiori* is it true that the adjoining land owner will take to the center of an artificial pond, like that under consideration, which is created by damming an ordinary stream, unless he has excluded himself from such right by deed or contract."

Later in *Improved Realty Corp.* v. *Sowers*, 195 Va. 317, 323, 78 S. E. 2d 588, we stated:

" '* * * In the case of inland lakes where the titles of the several riparian owners include the land covered by water, they may, as a general rule, together with their lessees and licensees, use the entire surface of the lake for boating and fishing, so far as they do not interfere with the reasonable use of the water by other riparian owners.' 22 Am. Jur., Fish and Fisheries, § 21, p. 682. *Hardin* v. *Jordan*, 140 U. S. 371, 11 S. Ct. 808, 35 L. ed. 428 at p. 436; *Taylor Fishing Club* v. *Hammett* (Tex. Civ. App.) 88 S. W. (2d) 127, 130; Annotation, 5 A. L. R. 1056."

The rule was approved in the recent case of *Leake* v. *Richardson*, 199 Va. 967, 977, 103 S. E. 2d 227. Defendants rely heavily upon the principle of law enunciated in the three above cases and say that they are controlling of the case at bar. But those cases are factually different from the present case. There the claim to ownership in the pond and its bed was based upon a riparian right of ownership of land adjacent to the pond. Here the complainants and the defendants acquired fee simple title by deeds to separate portions of the bed of the pond and their boundary lines are distinguishable. Under these circumstances the rule is not applicable.

"In cases where various parts of the soil under a private lake are owned by different persons, and in which it does not appear that ownership was based on riparian rights, it has generally been held that each owner has exclusive rights to the use of the surface of the water over his land, or at least that the owner of a larger portion can exclude from it the owner of a small portion." Annotation, 57 A. L. R. 2d 569, 592, § 10.

*Taylor Fishing Club* v. *Hammett, supra,* (Tex. Civ. App.) 88 S. W. 2d 127 (error refused) is analagous to the case at bar. Under patents issued by the State and subsequent conveyances the Club acquired title to the bed of the lake, including the land abutting thereon, except a small portion of the bed and the land abutting it on the north end thereof, which was owned by Hammett. The Club fenced in its portion of the lake. Hammett insisted that he and his invitees had a right to cross through the partition fence and fish from boats on the Club's portion of the lake. The Club instituted a suit to enjoin Hammett from entering its premises and taking fish therefrom and the trial court refused injunctive relief. The appellate court reversed the ruling of the lower court and held that the Club had title to all of the land, including the bed of the lake, within its inclosure and that the Club had exclusive right of boating and fishing within the inclosure. The case was remanded with directions to grant the injunction prayed for. In the course of its opinion, the court had this to say:

"It may be conceded as a general proposition, as contended by appellee, that under the common law a riparian landowner whose land abuts on a nonnavigable lake and whose field notes call for the lake as a boundary line impliedly owns the land under the water to the center of the lake and that all riparian owners whose lands abut on such a lake have a right to the joint use of the entire lake for fishing and boating. [Citing cases.] But regardless of what may be the rights of the abutting owners under such circumstances, we are of the

opinion that such rule has no application to the facts here under consideration. Here the appellee, by specific grant from the state, owned the land under a definite and specific portion of the lake, and we think it a sound proposition that an abutting landowner whose field notes cross a nonnavigable lake and who, by virtue thereof, holds title to a specific portion of the bed of the lake, has a right to control that part of the surface of the lake above his land, including the right to fish in or boat upon the water, and that any use or interference therewith by another constitutes an infringement on his rights as such owner. This is particularly true where, as in this case, the land lines are capable of being marked. [Citing cases.]" 88 S. W. 2d at page 130.

See also 36A C. J. S., Fish, § 4, 501, 504; 56 Am. Jur., Waters, § 275, p. 730; *Smoulter* v. *Boyd*, 209 Pa. 146, 58 A. 144; *Sanders* v. *De Rose*, 207 Ind. 90, 191 N. E. 331, and cases there cited.

Here complainants, the Swifts, are the fee simple owners of the submerged portion of the pond south of defendant Kulynych's southern line, the dam and land on three sides surrounding their portion of the pond, all of which was conveyed to them by deed. According to plats of survey, the line between the Swifts and Kulynych is distinguishable. Since the dam is on the land of complainants and is owned by them, they have complete control over it, and if, for some reason, the dam is destroyed, then the pond no longer exists and the defendants have no right of any sort in any part of the bed of the stream within complainants' land where the pond is. That land belongs entirely to the complainants and necessarily the pond to the extent that it lies wholly within the complainants' boundaries belongs to the complainants alone.

A fee simple title is the highest estate known to the law and necessarily implies absolute dominion and control over the land. 19 Am. Jur., Estates, § 14, p. 472. The control of the water above the land is an incident to the ownership of the land. The fact that the defendants own in fee simple a part of the pond does not give them the right to trespass upon complainants' land or the waters over it.

We hold that the complainants have exclusive control and use of the waters above their portion of the bed of the pond, and that they have the right to erect a fence on their boundary line across the pond to prohibit others from boating, fishing and trapping on their property.

Therefore, the decree appealed from is

*Affirmed.*