DIANA BEACHAM *et al.*, Plaintiffs-Appellants, v. LAKE ZURICH PROP-ERTY OWNERS ASSOCIATION, Defendant-Appellee.

Second District No. 2—86—0080

Opinion filed July 17, 1987.

Hall, Holmberg, Roach, Johnston, Fisher & Lessman, of Waukegan (Robert E. Lessman, of counsel), for appellants.

J. William Braithwaite, of Arnstein, Gluck, Lehr, Barron & Milligan, of Barrington, and Frank G. Roux, Ltd., of Lake Zurich (Frank G. Roux, of counsel), for appellee.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Diana Beacham, president of Sandy Point Beach, Inc., a recreational boating concern on Lake Zurich, sought a declaration that she and her customers had the right to the reasonable use and enjoyment of the entire surface waters of Lake Zurich without interference from defendant, the Lake Zurich Property Owners Association (LZPOA or association). The trial court determined that the LZPOA could prevent Beacham and her licensees from traversing the surface waters controlled by the association. Plaintiff's initial appeal

was dismissed by this court in an unpublished Rule 23 order on the basis that there was no final appealable order entered in the trial court. A final order was subsequently obtained and this appeal followed.

Lake Zurich is an approximately 240-acre unnavigable, private lake located in southern Lake County. The lake bed is owned by numerous different parties. In 1983, the Lake Zurich Property Owners Association was formed. The association solicited as members owners of property under the waters of Lake Zurich and owners of property contiguous to the shoreline. Qualified owners who joined the organization executed license agreements granting LZPOA a license to use and regulate their respective properties. The property licensed to LZPOA represented a major portion of the lake bed. As licensee, LZPOA asserted that it could control access to, and the use of, the waters over the property described in the lease agreements. Toward this end, LZPOA instituted regulations requiring that boats intending to use water above the property subject to the association's control purchase a sticker from the association. Quotas for each of the various types of boats permitted on the lake were established by the association. During the summer of 1983, the association instituted a private water patrol that distributed "courtesy" warnings to boats not having stickers. The warnings advised the operators that they were trespassing on private property, and if they did not leave, a complaint would be filed with the police and a citation issued.

Diana Beacham owns approximately 15% to 20% of the lake bed and has operated her boating business for over 30 years. Beacham did not join the LZPOA. On August 27, 1983, Beacham was sailing over a portion of the lake bed controlled by the LZPOA and was issued a warning by the association. She was later arrested and acquitted of criminal trespass to property. This civil action followed.

On appeal, the question to be resolved by this court is whether private lake bed owners are entitled to the exclusive use and control of the surface waters above their property to the exclusion of other lake bed owners. Plaintiff contends that ownership of a portion of lake bed entitles the owner to the reasonable use and enjoyment of the entire surface of the lake. Defendants contends that a lake bed owner has the right to exclusively control the surface waters above the owner's portion of the lake bed.

■■ The extent of the property rights enjoyed by the owner of a portion of the lake bed of an unnavigable, private lake is a question of first impression in Illinois. Defendant's contention that *Leonard v. Pearce* (1932), 348 Ill. 518, 181 N.E. 399, controls the instant case

misapprehends the scope of the supreme court's opinion. In *Leonard*, complainants sought an injunction restraining the owners of the Lake Zurich lake bed from interfering with their recreational use of the waters of the lake. The issues addressed by the court were the navigability of the lake, whether the lake had been dedicated to public use and whether a prescriptive right to use of the lake had been established. The court found that the lake was unnavigable, was not dedicated to public use and no prescriptive right to use the lake existed. The court concluded that the lake bed owners' termination of the free and unrestrained use of its waters simply amounted to the cancellation of a permissive use previously extended. The *Leonard* court was not confronted with the issue presented in this appeal. Consequently, *Leonard* does not provide precedential authority for the question to be resolved in this case.

A review of the case law in other States which directly addresses the question before us is appropriate. Defendant relies on a line of cases that adopt the so-called common law rule which sanctions a private lake bed owner's exclusive use and control of the waters above his particular parcel. Invariably, these cases pit the owner of almost the entire lake bed against an owner or owners of a minimal portion of the lake bed. (*Taylor Fishing Club v. Hammett* (Tex. Civ. App. 1935), 88 S.W.2d 127; *Sanders v. De Rose* (1934), 207 Ind. 90, 191 N.E. 331.) The following cases numerically typify the disparity: *Wickouski v. Swift* (1962), 203 Va. 467, 124 S.E.2d 892 (majority owner—28 acres, minority owner—1.3 acres of surface and submerged land); *Baker v. Normanoch Association, Inc.* (1957), 25 N.J. 407, 136 A.2d 645 (majority owner—447 acres, minority owner—13 acres); *Smoulter v. Boyd* (1904), 209 Pa. 146, 58 A. 144 (majority owner owned all of 215-acre lake bed except for 1¼ acres). The common law rule is predicated on application of the traditional property rights enjoyed by landowners.

Plaintiff, on the other hand, relies on cases adopting the so-called civil law rule which provides that the owner of a portion of a lake bed is entitled to use the surface of the entire lake as long as he does not unduly interfere with the rights of the other owners. (*Duval v. Thomas* (Fla. 1959), 114 So. 2d 791; *Beach v. Hayner* (1919), 207 Mich. 93, 173 N.W. 487.) In *Duval*, Thomas' small parcel of the lake bed of Lake Calm lay between the properties of Duval and Hruby. Through the erection of barriers, Thomas' use of the lake was restricted to a small "wedge-shaped" area. Thomas sought relief against this obstruction to his access to the entire lake. In adopting the civil law rule and rejecting the common law rule, the Florida Su-

preme Court pointed out two persuasive drawbacks to the common law rule. First, the court referred to the adverse effects of erecting barriers along property lines of a lake:

> "We think the situation of Thomas is a classic example of the unpleasant and impractical state of affairs that would result from the application of a rule that each owner could erect a barricade on his boundary line, though it was of the kind, such as a fence, that would not disturb the waters in place, but would prevent adjacent owners from enjoying the ordinary pleasures of the lake." (*Duval v. Thomas* (Fla. 1959), 114 So. 2d 791, 795.)

Second, the court took judicial knowledge of the importance of tourism in Florida and noted:

> "Florida is advertised as a playground, a retreat from the hurryscurry of the modern world and from the rigors of northern climes. Fishing and swimming are prominent if not principal items of the entertainment the stranger expects to find here. If the enjoyment of non-navigable lakes were to be curtailed or restricted by a holding that the owner of a portion of one of them, and his guests, should enjoy the waters only within the property lines the damage would be immeasurable." 114 So. 2d 791, 795.

In *Beach*, plaintiff, who owned 80% of Silver Lake, sought to enjoin various defendants, who owned six parcels accounting for the remaining 20% of the lake, from entering onto his waters. The court held that where there are several owners to an inland lake, such proprietors and their licensees may use the surface waters of the whole lake for boating and fishing so long as they do not interfere with the reasonable use of the waters by other owners. (*Beach v. Hayner* (1919), 207 Mich. 93, 97-98, 173 N.W. 487, 489.) The court reasoned that to hold with plaintiff would cause the establishment of a rule very difficult in application because "owners and their licensees would have a clear right to enter upon certain portions of the surface of the lake and it certainly would be very difficult to establish definite lines of demarcation along the property lines of the various owners." 207 Mich. 93, 97, 173 N.W. 487, 488.

We favor the arguments presented in support of the civil law rule. Adoption of this rule promotes the cooperative enjoyment of the private lakes of this State and avoids the potential drawbacks associated with the actual, or imaginary, erection of barricades along the property lines of the private waterways of Illinois. We therefore hold that where there are multiple owners of the bed of a private, unnavi-

gable lake, such owners and their licensees have the right to the reasonable use and enjoyment of the surface waters of the entire lake provided they do not unduly interfere with the reasonable use of the waters by other owners and their licensees.

It appears from the record in the instant case that the orders of the trial court from which this appeal was taken were predicated upon an application of the so-called common law rule. Therefore, the order of the circuit court of Lake County entered on December 4, 1984 (agreed order), is vacated, and the orders of December 4, 1984 (denying plaintiff's motion for summary judgment and granting defendant's motion for judgment on the pleadings), and December 30, 1985 (granting defendant's motion to dismiss with prejudice counts I and II of the second amended complaint), are reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

REINHARD and NASH, JJ., concur.