2000 UT App 371

John COLLINS and June Collins, Petitioners and Appellants,

v.

SANDY CITY BOARD OF ADJUSTMENT; and Sandy City Corporation, a municipal corporation, Respondents and Appellees.

No. 991068–CA.

Court of Appeals of Utah.

Dec. 21, 2000.

Franklin L. Slaugh, Sandy, for Appellants.

Steven C. Osborn, Sandy, for Appellees.

Before GREENWOOD, P.J., and BILLINGS, and DAVIS, JJ.

## OPINION

BILLINGS, Judge:

¶ 1 John and June Collins (Collins) appeal from summary judgment in favor of the Sandy City Board of Adjustment (Board). We affirm.

## BACKGROUND

¶ 2 The Collins own certain real properties located in R–1–8 residential zones in Sandy City.[1] The Collins claim they used the properties as short-term rentals (rentals of less than thirty days) until March 26, 1996 when Sandy City ordered them to cease such use. Sandy City claimed their use was in violation of a zoning ordinance which the City claimed prohibited short-term rentals.

¶ 3 The Collins appealed the cease and desist order to the Board. The Board upheld the City's interpretation of the ordinance. The Collins appealed the decision of the Board to the third district court, which affirmed the Board's decision.

¶ 4 The Collins did not appeal the district court's decision. Rather, they chose to await the outcome of *Brown et al. v. Sandy City Board of Adjustment,* 957 P.2d 207 (Utah Ct.App.1998), which involved the same issue of whether the Sandy City Land Development Code prohibited short-term rentals in R–1–8 and R–1–10 residential zones as the Board and district court had concluded. *See id.* at 212. In *Brown,* this court held that "short-term leases of residential properties are not prohibited by the zoning ordinance," and thus invalidated the City's interpretation of the ordinance.[2] *Id.* In response to *Brown,* Sandy City placed a moratorium on all short-term rentals, effective March 27, 1998, *see* Sandy City, Utah, Ordinance No. 98–19, and thereafter, on September 1, 1998, amended the ordinance specifically prohibiting short-term leases. *See* Sandy City, Utah, Ordinance No. 98–35.

¶ 5 On October 27, 1998, the Collins filed an application with the Board seeking non-conforming use status on their properties. The Board denied the application because the Collins did not establish that they were using the properties as short-term rentals on March 27, 1998, the effective date of the moratorium.

¶ 6 The Collins appealed the Board's decision to the trial court. On cross motions for summary judgment, the trial court entered summary judgment for the Board on all properties. The trial court held that the Collins' claim was barred on the grounds of res judicata because the Collins failed to appeal the 1996 trial court decision. Additionally, the trial court found that the properties did not qualify for nonconforming use status because the Collins had failed to produce evidence to show that they were using

---

1. The properties at issue on appeal include those located at 1875 East Alla Panna Way, 472 East 9400 South, and 9255 Maison Drive. The property located at 1456 East Longdale Drive was not part of the trial court's order and therefore is not properly before this court on appeal.

2. It is undisputed that, had the Collins appealed, they would also have obtained this result.

their properties as short-term rentals on March 27, 1998, and that the Collins had failed to produce evidence to show that their use of the properties was in conformity with the applicable zoning ordinances. The Collins appeal.

## STANDARD OF REVIEW

¶ 7 Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c). "We review a grant of summary judgment for correctness." *Baczuk v. Salt Lake Reg'l Med. Ctr.*, 2000 UT App 225, ¶ 5, 8 P.3d 1037 (citation omitted).

## ANALYSIS

¶ 8 The doctrine of res judicata comprises two different branches: claim preclusion and issue preclusion. *See Madsen v. Borthick*, 769 P.2d 245, 247 (Utah 1988). Issue preclusion is before us in this appeal. Issue preclusion, often referred to as collateral estoppel, prevents relitigation of issues already determined in a previous action. *See id.* at 250. Issue preclusion applies if four requirements are met:

> First, the issue in both cases must be identical. Second, the judgment must be final with respect to that issue. Third, the issue must have been fully, fairly, and competently litigated in the first action. Fourth, the party who is precluded from litigating the issue must be either a party to the first action or a privy of a party.

*Id.* "If any one of these requirements is not satisfied, there can be no issue preclusion." *Hill v. Seattle First Nat'l Bank*, 827 P.2d 241, 245 (Utah 1992) (citations omitted).

¶ 9 The Collins concede that three of the four requirements of issue preclusion are met but argue that the issues in the 1996 case and this case are not identical. The Collins argue that in the 1996 action the issue was whether the current Sandy City ordinances prohibited leases of dwellings for terms of less than thirty days. In this action, they argue that the issue presented is whether they are entitled to a nonconforming use status because of their use prior to the 1998 ordinance.

¶ 10 The Board responds that the central issue in the 1996 action was whether short-term rentals were lawful. The Board asserts that the legality of short-term rentals is also central to the Collins' claim for nonconforming use status because to qualify for a nonconforming use the applicant must show that the use was legally established and continued before the enactment or effective date of the restrictive legislation. *See* Sandy City, Utah, Rev. Dev.Code § 15–24–2.

¶ 11 In support of its position, the Board cites *Robertson v. Campbell*, 674 P.2d 1226 (Utah 1983). In *Robertson*, the issue was whether a finding of undue influence in the execution of a will collaterally estopped relitigation of the issue of undue influence as to a trust. *See id.* at 1230–31. The defendant argued that collateral estoppel was not applicable because the issue tried and resolved in the first case, the validity of a will, was different than that in the second, the validity of a trust. *See id.* at 1230.

¶ 12 The court stated that "[w]hat is critical is whether the issue that was actually litigated in the first suit was essential to resolution of that suit and is the same factual issue as that raised in the second suit." *Id.* (citing *Searle Bros. v. Searle*, 588 P.2d 689, 691 (Utah 1978)). The court held that relitigation of the issue of undue influence was collaterally estopped because the validity or invalidity of the will was a legal conclusion based on the factual finding of undue influence. *See id.*

¶ 13 The court reasoned that:

> "[I]t is not the identity of the thing sued for, or of the cause of action, which determines the conclusiveness of a former judgment upon a subsequent action, but merely the identity of the issue involved in the two suits. If an issue presented in a subsequent suit between the same parties or their privies is shown to have been determined in a former one, the question is res judicata [or collateral estoppel], although the actions are based on different grounds, or tried on different theories, or are instituted for different purposes and seek different relief."

*Id.* (quoting *Pickeral v. Federal Land Bank,* 177 Va. 743, 15 S.E.2d 82, 85 (1941)) (alterations in original).

¶ 14 We conclude *Robertson* defeats the Collins' claim that because the actions are based on different legal grounds—legality of short-term rentals versus noncomforming use—they are not identical issues. Because the central issue in the 1996 action was the legality of the short-term rentals under the ordinance, and in this suit we must determine that the pre 1996 use was lawful in order to establish a valid nonconforming use, the same issue is involved.

¶ 15 The Collins next argue that, regardless of whether the issues in the 1996 suit and this suit are identical, because of an intervening change in the law, they should not be barred under the principles of res judicata.

■ ¶ 16 The Collins cite dicta from *Norman v. Murray First Thrift & Loan Co.,* 596 P.2d 1028 (Utah 1979) for the proposition that in addition to the four requirements of issue preclusion, the court must further inquire as to "whether the controlling facts or legal principles have changed significantly since the prior judgment ." *Id.* at 1032. This statement of dicta has never been cited in subsequent Utah case law. Nonetheless, we agree that it is the general rule that a subsequent change in the operative facts or the controlling law has generally relieved a party from the application of res judicata. *See State Farm Mut. Auto. Ins. Co. v. Duel,* 324 U.S. 154, 162, 65 S.Ct. 573, 576, 89 L.Ed. 812 (1945); *Community Hosp. v. Sullivan,* 986 F.2d 357, 360 (10th Cir.1993); *Muchard v. Berenson,* 307 F.2d 368, 369–70 (5th Cir. 1962); *Wagner v. Baron,* 64 So.2d 267, 268 (Fla.1953); *Statler v. Catalano,* 293 Ill. App.3d 483, 229 Ill.Dec. 274, 691 N.E.2d 384, 386–87 (1997); *Blevins v. Johnson,* 344 S.W.2d 375, 377 (Ky.1961); *Farrow v. Brown,* 873 S.W.2d 918, 920–21 (Mo.Ct.App. 1994); *State v. J.P. Lamb Land Co.,* 401 N.W.2d 713, 718 (N.D.1987); *Marino v. State Farm Fire & Cas. Ins. Co.,* 787 S.W.2d 948, 950 (Tex.1990).

¶ 17 In *State Farm Mutual Automobile Insurance Co. v. Duel,* 324 U.S. 154, 65 S.Ct. 573, 89 L.Ed. 812 (1945), the Supreme Court stated that "it is . . . the general rule that res judicata is no defense where between the time of the first judgment and the second there has been an intervening decision or a change in the law creating an altered situation." *Id.* at 162, 65 S.Ct. at 576.

¶ 18 An illustrative case is *Statler v. Catalano,* 293 Ill.App.3d 483, 229 Ill.Dec. 274, 691 N.E.2d 384 (1997). *Statler* dealt with a dispute over the rights to the surface waters of a lake. *See id.,* 691 N.E.2d at 385. The court determined that, under the prevailing case law, the plaintiffs only had a right to use a portion of the lake rather than the whole. *See id.* Seven years later, the plaintiffs filed suit again seeking a declaration of their right to use the entire lake. *See id.* The defendant moved to dismiss under the doctrine of res judicata. *See id.* The trial court denied the motion, finding that a subsequent change in the case law rendered res judicata inapplicable. *See id.,* 691 N.E.2d at 385–86.

¶ 19 In affirming the trial court, the Illinois Court of Appeals reasoned that

[e]ven though the basic facts have not changed, it is generally accepted that [r]es judicata does not operate as an automatic bar where between the time of the first judgment and the second there has been an intervening decision or a change in the law creating an altered situation.

*Id.,* 691 N.E.2d at 386–87 (citation omitted).

¶ 20 In the instant case, the interpretation of the ordinance the Board relied on, and which the district court held barred the Collins from using their properties as short-term rentals in the original 1996 action, was invalidated in *Brown. Brown* clearly held the ordinance in question did not bar short-term rentals. *See Brown,* 957 P.2d at 212. Thus the law has changed since the 1996 suit.

¶ 21 The Board responds claiming that res judicata is not defeated by a subsequent change in the law when a party elects to forgo an opportunity to appeal the first adverse judgment, and stands by while others with the same legal claim pursue appeals which result in the change in the law.

¶ 22 The Board relies on *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394,

101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), a case strikingly similar to the one before us. In *Moitie*, seven civil class actions were brought against owners of various department stores alleging violation of federal antitrust law. *See id.* at 395, 101 S.Ct. at 2426. The district court dismissed all of the actions in their entirety concluding that the purchasers had not alleged an "injury" to their "business or property" within the meaning of the Clayton Act. *See id.* at 396, 101 S.Ct. at 2426. Plaintiffs in five of the suits appealed the judgment to the United States Court of Appeals for the Ninth Circuit while two of the plaintiffs did not, choosing instead to re-file their claims in state court. *See id.* at 395, 101 S.Ct. at 2427.

¶ 23 After removal of the state claims to federal court, the federal district court concluded that the claims were essentially the same as those decided in the original federal action and dismissed them under the doctrine of res judicata. *See id.* at 397, 101 S.Ct. at 2427. Subsequently, the United States Supreme Court in an unrelated case held that retail purchasers can suffer an "injury" to their "business or property" under the Clayton Act. *See id.* Based on this decision, the Ninth Circuit reversed and remanded the five class actions that had been appealed and were before the court. *See id.* When the two other cases came before the Ninth Circuit, the court again reversed, refusing to apply res judicata, reasoning that "non-appealing parties may benefit from a reversal when their position is closely interwoven with that of appealing parties." *Id.* at 398, 101 S.Ct. at 2427 (citation omitted). The Supreme Court reversed.

¶ 24 The Court reasoned that

an "erroneous conclusion" reached by the court in the first suit does not deprive the defendants in the second action "of their right to rely upon the plea of res judicata.... A judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause [of action]." We have ob-

served that "[the] indulgence of a contrary view would result in creating elements of uncertainty and confusion and in undermining the conclusive character of judgments, consequences which it was the very purpose of the doctrine of res judicata to avert."

*Id.* at 398–99, 101 S.Ct. at 2428 (quoting *Reed v. Allen*, 286 U.S. 191, 201, 52 S.Ct. 532, 534, 76 L.Ed. 1054 (1932)) (alterations in original). The Court also noted that the "respondents here made a calculated choice to forgo their appeals," *id.* at 400–01, 101 S.Ct. at 2429, and that

"[t]he predicament in which respondent finds himself is of his own making.... [We] cannot be expected, for his sole relief, to upset the general and well-established doctrine of res judicata, conceived in the light of the maxim that the interest of the state requires that there be an end to litigation-a maxim which comports with common sense as well as public policy."

*Id.* at 401–02, 101 S.Ct. at 2429 (quoting *Reed*, 286 U.S. at 198–99, 52 S.Ct. at 533) (alterations in original). This language is similar to that used by the Court in *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950), which stated that "[p]etitioner made a considered choice not to appeal ... [h]is choice was a risk, but calculated and deliberate and such as follows a free choice. Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong.... There must be an end to the litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Id.* at 198, 71 S.Ct. at 211–12.

¶ 25 The case before us presents virtually the same factual situation as was presented in *Moitie*. The Collins deliberately chose to forgo their appeal, instead choosing to rely on the outcome of the appeal of the same legal issue in *Brown*. The Collins now seek to be relieved from their "considered choice not to appeal," and to benefit from the change in the law which they could have obtained but which they chose not to pursue.[3]

---

3. The Collins quote language from *Arizona v. California*, 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983), in an attempt to bolster their argument that a subsequent change of law bars

¶ 26 This refusal to allow a non-appealing party to benefit from the normal change of law exception to collateral estoppel has also been recognized by our sister state courts. *See Gail v. Western Convenience Stores*, 434 N.W.2d 862, 863 (Iowa 1989) (stating "the res judicata consequences of a final, unappealed judgment on the merits are not altered by the fact that the judgment may have been wrong or rested on legal principles later overruled in another case"); *Ellis v. Whittaker*, 10 Kan.App.2d 676, 709 P.2d 991, 994 (1985) (refusing to vacate judgment on basis of subsequent decision changing law because of failure to appeal judgment); *Cleveland v. Ohio Dep't of Mental Health*, 84 Ohio App.3d 769, 618 N.E.2d 244, 247–48 (1992) (holding that failure to appeal judgment bars collateral attack even if judgment is based on erroneous view of law); *see also Jachim v. Townsley*, 249 Ill.App.3d 878, 189 Ill.Dec. 268, 619 N.E.2d 1317, 1319 (1993); *Whenry v. Whenry*, 98 N.M. 737, 652 P.2d 1188, 1192 (1982); *In re Marriage of Vinson*, 57 Or.App. 355, 644 P.2d 635, 638 (1982).

¶ 27 Although Utah's courts have not specifically dealt with a *Moitie* res judicata situation, the Utah Supreme Court in *Piacitelli v. Southern Utah State College*, 636 P.2d 1063 (Utah 1981), cited *Moitie* for the proposition that a final order, "unless reversed on appeal, is res judicata and binding." *Id.* at 1065 (citing *Bradshaw v. Kershaw*, 627 P.2d 528 (Utah 1981); *Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103).

¶ 28 In *Piacitelli*, the plaintiff commenced action against Southern Utah State College (SUSC) alleging that its failure to renew his employment contract was a dismissal for cause and violated his rights under SUSC personnel policies. *See id.* at 1064. SUSC argued that the plaintiff's contract was on a year-to-year basis and thus expired on its own terms. *See id.* The trial court held that the plaintiff was not on a year-to-year contract and thus the procedures in the policy governed. *See id.* at 1065. The Utah Supreme Court noted that because the order of the trial court was not appealed it was binding upon the parties. *See id.* Thus, the court treated the plaintiff as an employee with permanent status who was entitled to the procedures set forth in the SUSC policy. *See id.*

 ¶ 29 We are persuaded by the reasoning of *Moitie* and similar cases. In a situation where one party in cases litigating the same legal issue chooses not to pursue an appeal, that party may not benefit from the change of law exception to res judicata where had that party chosen to appeal the change of law would have been obtained. Thus, we conclude the district court was correct in dismissing this case as it was barred under the doctrine of res judicata.[4]

¶ 30 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, JAMES Z. DAVIS, Judge.

---

application of res judicata. *Arizona v. California* involved a dispute over water rights between several western states and Indian tribes. *See id.* One of the issues before the Court was whether to modify a prior adjudication and decree involving water rights within reservation boundaries. *See id.* at 615–16, 103 S.Ct. at 1389.

In *Arizona*, the Court stated that res judicata did not apply because there was a provision in the decree that allowed the Court to retain jurisdiction and modify, amend, or supplement the same where appropriate. *See id.* at 618, 103 S.Ct. at 1391. It was the propriety of doing the same that the Court was dealing with in *Arizona*, a wholly different set of circumstances than those before us. *See id.* The Court merely touched on the general rules of preclusion, noting that while they "are not strictly applicable, the principles upon which these rules are founded should inform our decision." *Id.* at 619, 103 S. Ct at 1391.

4. Because we agree with the trial court that the Collins' suit is barred on the grounds of res judicata we do not reach the other issues raised on appeal.